# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **SUMMIT FIRE PROTECTION CO.,** a Minnesota corporation;<br><br>**Plaintiff,**<br><br>vs.<br><br>**TED REICH,**<br><br>**Defendant.** | 8:19CV188<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 6, filed by Plaintiff Summit Fire Protection Co. ("Summit"). Summit appeared before the Court on May 13, 2019, for a hearing on the Motion. Defendant Ted Reich and his counsel also appeared at the hearing. The parties agreed that the matter would proceed only on the question of whether a Temporary Restraining Order should be issued, and the Court would hear the request for Preliminary Injunction in the future. For the reasons stated below, the Court will deny the Motion for Temporary Restraining Order and set the matter for hearing on Summit's Motion for Preliminary Injunction.

## BACKGROUND

The following is a summary of the facts alleged in Summit's Complaint, ECF No. 1, and supported by evidence Summit submitted in support of its Motion, ECF No. 8-1 through 8-12. At the hearing, counsel for Reich made a proffer which the Court accepted as evidence. The Court considers this evidence for the limited purpose of deciding the pending Motion for Temporary Restraining Order.

Summit is a provider of fire life safety services including fire sprinkler systems, fire extinguishers, and fire alarm systems. Summit performs work selling, installing, inspecting, and repairing sprinkler systems, fire extinguishers, and fire alarm systems. Summit performs these services at regular intervals for its clients.

Summit hired Reich as a service manager in June 2015. He had job and management responsibilities, including managing field staffing, scheduling, dispatching, sales, customer service, scheduling inspections of fire sprinkler systems, and completing inspections of fire sprinkler systems. On or about July 13, 2015, Reich executed an "Acknowledgement and Receipt of Employee Handbook" (the "Acknowledgement"). The Acknowledgement states:

> [C]onfidentiality is a major principle governing the Company's work environment and that all information which is not generally known or readily ascertainable by the general public through proper means which relates to the Company's products, services, customers, or existing or reasonably foreseeable business must be treated confidentially at all times. I am aware that, during the course of my employment, confidential information will be made available to me as defined in the Handbook and other related information. I understand that this information is critical to the success of the Company and must not be disseminated or used outside of my employment, whether voluntary or involuntary. In the event of the termination of my employment, whether voluntary or involuntary, I agree not to use this information or disseminate it to any other individual or entity, I also understand that as an employee of the Company, I owe it a duty of loyalty as defined under applicable law and will abide by it.

Ex. A at 17, ECF No. 8-2, PageID.72.

Summit's employee handbook defined confidential information as "information which is not generally known or readily ascertainable by the general public through proper means. It includes, but is not limited to, all designs, specifications, acknowledgements, customer lists, accounting and financial information, production information, internal

2

correspondence, and sales and customer information." Ex. A at 10, ECF No. 8-2, PageID.65.

On or about September 1, 2018, Reich's job responsibilities changed and he began working for Summit as a project foreman, overseeing installation of a sprinkler system at a new construction site. Because of this change, Reich had regular access to a Summit network drive that Summit alleges contained information about Summit's customers. Reich was issued a company HP laptop, Samsung Tablet, Apple iPad, and Samsung Galaxy 8 phone (collectively the "Electronic Devices"). Reich used the Electronic Devices to complete the tasks assigned to him within the scope of his employment duties.

On March 8, 2019, Reich resigned from Summit. Summit alleges that at the time of his resignation, Reich was already employed by Total Fire, one of Summit's competitors. As evidence, Summit alleges that Reich had regular and frequent phone contact with Total Fire while he was still employed by Summit, including 72 calls while he was "clocked in" as an employee of Summit. Reich asserts that these calls were likely related to his employment with Summit because Total Fire was a regular subcontractor of Summit. Summit also alleges that on January 9, 2019, Reich accessed a document titled, "Total Fire & Security Business Plan Ted Copy.lnk" on his summit-issued laptop. Shakespeare Aff. at 2, ECF No. 8-4. Reich asserts that this was an unfinished document that he provided to a business associate as a template, and that he did not access the document in connection with his employment with Total Fire.

Summit conducted a forensic analysis of Reich's Summit-issued Electronic Devices after his resignation. The analysis revealed that 8 USB devices had connected to Reich's Summit-issued HP laptop between January and March of 2019. Shakespeare

Aff. Ex. A, ECF No. 8-5.  Summit alleges that at least two of the USB devices contained Summit's confidential customer information.  For example, the document "WORK ORDER TRACKING.xlsx" contained information about (1) the identity of Summit's customers in the Omaha area, (2) the customers' contact information, (3) frequency of inspections for each customer, and (4) the dates on which inspections were coming due.  Additionally, the document "Barone Fire Sprinkler Accounts.lnk" contained a detailed listing of all of Summit's sprinkler inspection accounts in Nebraska with a customer. The document "JHatcher daywoks 2015.xls" contained a comprehensive list of service work performed (including job number, customer, and date) on behalf of Summit by the manager of Summit's Omaha office, John Hatcher, since the office's inception.  The analysis also revealed that Reich deleted the browsing history from his laptop's internet browser on March 8, 2019.

After Reich's resignation, he began soliciting Summit's customers on behalf of Total Fire.  As of May 10, 2019, Summit claims that Reich, on behalf of Total Fire, has successfully solicited at least 30 of Summit's customer accounts.  On April 26, 2019, Summit filed this action asserting several causes of action against Reich, including breach of contract, misappropriation of trade secrets, and breach of duty of loyalty.  Reich, through counsel, asserts that he did not access any confidential customer information on behalf of Total Fire and does not now possess any information or data belonging to Summit.

## DISCUSSION

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), when determining whether to

issue a preliminary injunction or temporary restraining order. Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). Based on the evidence at this early stage, the factors do not weigh in favor of a temporary restraining order.

**I. Irreparable Harm**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Ents., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). Thus, "economic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015) (quoting *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013)). A mere possibility of irreparable harm, however, is insufficient to justify a preliminary injunction. The movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). "The absence

of irreparable injury is by itself sufficient to defeat a motion for a preliminary injunction." *Chlorine Inst.*, 792 F.3d at 915 (quoting *DISH Network*, 725 F.3d at 882).

"Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (citing *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987)). A loss of customers or customer goodwill are not necessarily irreparable. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("[W]e question whether [the] alleged injuries, i.e., a loss of customers or customer goodwill, are truly irreparable in the sense that they could not be addressed through money damages . . . .") (citing *Gen. Motors Corp. v. Harry Brown's, L.L.C.*, 563 F.3d 312, 319 (8th Cir. 2009) (affirming denial of preliminary injunction where the district court did not clearly err by finding the harm from "lost customer relationships was equivalent to a claim of lost profits").

Summit alleges it has lost 30 customers to Total Fire since Reich's departure, and that it will continue to lose customers absent an injunction. At this juncture, Summit has not met its burden of demonstrating that its expectation of further lost customers or customer goodwill would likely be "truly irreparable" and incapable of compensation through money damages. *Dawson*, 725 F.3d at 895; *see* Rubald Decl., ECF No. 8-1, Page ID 54 (concluding that "[t]he loss of customers . . . cannot be readily measured in dollar terms"). Nor has Summit demonstrated that damage to its reputation or goodwill is likely. Therefore, the Court finds that the irreparable-harm factor weighs against granting a temporary restraining order.

## II. Likelihood of Success on the Merits

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir.1995)). With respect to this factor, it is not necessary for the movants to prove they are more likely than not to prevail, the movants "need only show a reasonable probability of success, that is, a fair chance of prevailing" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Dataphase*, 640 F.2d at 113. For each of Summit's causes of action, Summit must show that Reich took confidential information from Summit and has used it to unfairly solicit Summit's customers.

The alleged confidential information, principally in the form of customer lists, may be protected as a trade secret under Nebraska and federal law. *See Home Pride Foods, Inc. v. Johnson*, 634 N.W.2d 774, 781 (Neb. 2001) (holding that a customer list was a trade secret where "the customer list contained information not available from publicly available lists," such as which customers had previously placed food orders, along with the amount of those orders). However, based on the evidence at this stage, Summit has not shown that Reich has improperly used confidential customer information. It is undisputed that Reich is free to compete with Summit, even if such competition includes soliciting Summit's former customers using publicly available information. The evidence does not create a reasonable inference that Summit has lost customers due to Reich's knowledge of Summit's confidential information. Reich would be precluded from using confidential information to solicit customers, but there is no evidence that he has done so. Counsel for Reich asserted that Reich does not possess any of Summit's information,

nor has Reich used such information to solicit Summit's customers. Accordingly, Summit has not shown that it is likely to succeed on the merits.

## III. Balance of the Harms

The primary question when applying the balance-of-harms factor is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op.*, 28 F.3d at 1473. A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

At this stage, Summit has not shown that the balance of harms weighs in favor of a temporary restraining order. Summit asks that Reich be ordered not use confidential information to solicit customers and that confidential information in Reich's possession, if any, be returned. Reich asserts that he has not used Summit's confidential information, nor does he have possession of any such information. Accordingly, the balance of harms does not weigh in favor of a temporary restraining order.

## IV. Public Interest

Courts have held that the public interest favors a fair, competitive marketplace. *See e.g. Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1134 (D. Minn. 1996), *aff'd sub nom. Minnesota Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305 (8th Cir. 1997). Reich is free to compete with Summit, including soliciting its customers. The evidence is insufficient at this stage to show Reich has improperly solicited Summit's customers, using confidential information gained during his

employment with Summit.  Accordingly, the public interest does not favor a temporary restraining order.

## CONCLUSION

Based on the evidence at this stage, the *Dataphase* factors do not favor issuance of a temporary restraining order.  While Reich may not use confidential information obtained from Summit, the evidence does not demonstrate that he has done so or is likely to do so.  The Court will schedule a hearing on Summit's Motion for Preliminary Injunction at a time convenient to the Court and the parties.

IT IS ORDERED:

1. The Motion for Temporary Restraining Order, within ECF No. 6, filed by Plaintiff Summit Fire Protection Co. is denied;

2. The Clerk of Court is directed to designate the Motion for Preliminary Injunction, within ECF No. 6, as still pending.

Dated this 13th day of May 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge