# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **SUMMIT FIRE PROTECTION CO.**, a Minnesota corporation;<br><br>**Plaintiff**,<br><br>vs.<br><br>**TED REICH,**<br><br>**Defendant.** | **8:19CV188**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Motion for a Preliminary Injunction, ECF No. 6, submitted by Plaintiff Summit Fire Protection Co. ("Summit"). After a hearing on the matter, and for the reasons stated below, the Court will grant the Motion in part.

## BACKGROUND

The following is a summary of the facts alleged in Summit's Complaint, ECF No. 1, as well as the briefs and evidence submitted by both parties. ECF Nos. 8, 45–47, 50–51, 55. At the hearing, the Court took judicial notice of the evidence filed on the record. The parties did not submit additional evidence. The Court considers this evidence only for purposes of the pending Motion for Preliminary Injunction.

Summit is a provider of fire life safety services including fire sprinkler systems, fire extinguishers, and fire alarm systems. Summit sells, installs, inspects, and repairs sprinkler systems, fire extinguishers, and fire alarm systems. Summit typically inspects its clients' sprinkler systems, fire extinguishers, and fire alarm systems at regular intervals.

Summit hired Reich as a service manager in June 2015. Reich's responsibilities included managing Summit's field employees in Nebraska. Reich also managed scheduling, dispatching, sales, customer service, and fire sprinkler systems inspections.

On or about July 13, 2015, Reich executed an "Acknowledgement and Receipt of Employee Handbook" (the "Acknowledgement"). Rubald Decl. 7. The Acknowledgement stated:

> [C]onfidentiality is a major principle governing the Company's work environment and that all information which is not generally known or readily ascertainable by the general public through proper means which relates to the Company's products, services, customers, or existing or reasonably foreseeable business must be treated confidentially at all times. I am aware that, during the course of my employment, confidential information will be made available to me as defined in the Handbook and other related information. I understand that this information is critical to the success of the Company and must not be disseminated or used outside of my employment, whether voluntary or involuntary. In the event of the termination of my employment, whether voluntary or involuntary, I agree not to use this information or disseminate it to any other individual or entity, I also understand that as an employee of the Company, I owe it a duty of loyalty as defined under applicable law and will abide by it.

Ex. A at 17, ECF No. 8-2, PageID.72.

Summit's employee handbook defined confidential information as "information which is not generally known or readily ascertainable by the general public through proper means. It includes, but is not limited to, all designs, specifications, acknowledgements, customer lists, accounting and financial information, production information, internal correspondence, and sales and customer information." Ex. A at 10, ECF No. 8-2, PageID.65.

On or about September 1, 2018, Reich's job responsibilities changed, and he began working for Summit as a project foreman. As a foreman, Reich oversaw sprinkler

2

system installations at new construction sites. After this change, Reich had regular access to a Summit network drive that allegedly contained confidential information and trade secrets. Reich was issued a company HP laptop, Samsung Tablet, Apple iPad, and Samsung Galaxy 8 phone (collectively the "Electronic Devices"). Reich used the Electronic Devices to complete the tasks assigned to him within the scope of his employment duties.

On March 8, 2019, Reich resigned from Summit and began working for Total Fire. Summit presented evidence that after Reich's resignation, he began soliciting Summit's customers on behalf of Total Fire. Over forty Summit customers have switched to Total Fire since Reich's resignation. On his last day of his employment with Summit, Reich returned the Electronic Devices. Reich also submitted evidence that he destroyed USB devices potentially containing Summit information. Reeser Aff. ECF No. 47-2. Reich maintained that he did not send any Summit documents to Total Fire employees other than documents used on joint projects. Answers to Interrogs. 1, ECF No. 51-3, PageID.562.

After Reich's resignation, Summit conducted a forensic analysis of his Summit-issued Electronic Devices. The analysis revealed that 8 USB devices had connected to Reich's Summit-issued HP laptop between January and March of 2019. Shakespeare Aff. Ex. A, ECF No. 8-5. Summit alleges that at least two of the USB devices contained Summit's confidential customer information. One of the USB devices contained a document called "New estimate form.xlsx." Ex. A, ECF No. 45-1.

Summit filed this action on April 26, 2019, and a motion for temporary restraining order and preliminary injunction on May 10, 2019. On May 13, 2019, the Court denied

3

Summit's temporary restraining order because Summit was not able to show that Reich was in possession of, or had disclosed, any of Summit's confidential information. Nevertheless, the Court permitted the parties to conduct limited discovery before the hearing on Summit's motion for preliminary injunction.

Discovery included a forensic analysis of several Total Fire computers. The analysis revealed that, on March 24, 2019, Reich sent an email to Mark Donner, another Total Fire employee, with several attachments, including one called "New estimate form.xlsx" (the "New Estimate Form"). Ex. D, ECF No. 46-4, PageID.342. Summit alleges that it used the New Estimate Form to create estimates. Summit alleges that the New Estimate Form was confidential because it included Summit's costs, profit margins, exclusive pricing, and other information that could be used by Total Fire to undercut Summit's bids on projects. Bedel Aff. At 2–3, ECF No. 45.

At Reich's deposition, he admitted that he forwarded the New Estimate Form to Donner. Reich Dep., ECF No. 51-2, PageID.420. Reich testified that the New Estimate Form was on one of the USB devices he destroyed on his last day of work and he did not recall how he had access to the form after he left Summit. Other than the New Estimate Form, the forensic analysis did not show that Reich possessed any other Summit documents.

## DISCUSSION

As stated in its previous Memorandum and Order, courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.

1981) (en banc), when determining whether to issue a preliminary injunction.[1] Summit has demonstrated that the *Dataphase* factors support a limited preliminary injunction.

The primary question when issuing a preliminary injunction is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Ents., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)).

Summit has shown that the data[2] in the New Estimate Form included Summit's costs, profit margins, exclusive pricing, and other information that could be used to gain a competitive advantage over Summit. The evidence also shows that Reich possessed the New Estimate Form and shared it with Total Fire employees, potentially during a competitive bidding process. Reich argues that the data was outdated, and that Total Fire did not use the data. If this is true, a preliminary injunction against use of the data

---

[1] Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008).

[2] Summit acknowledged at the preliminary injunction hearing that the form itself was not confidential and proprietary. Thus, the Court's analysis focuses on the data allegedly contained in the form.

poses no risk of harm to Reich.  Accordingly, with respect to the data in the New Estimate Form, the balance of harms weighs in favor of Summit.

Summit argues that the preliminary injunction should enjoin more than use data in the New Estimate Form and should require Reich to return documents or devices that contain Summit's confidential information.  However, "[a] preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original).

Summit has not shown that Reich possessed documents or devices containing Summit's confidential information, except the data in the New Estimate Form. Although the circumstances of Reich's transmission of the New Estimate Form are suspect, and discovery is ongoing, there is no evidence at this stage that leads the Court to conclude Reich possessed or now possesses other confidential information.  Accordingly, the evidence does not demonstrate a threat of irreparable harm to Summit related to any information, documents, or data in Reich's possession, other than the data contained in the New Estimate Form.

The Court will enjoin Reich from using the data in the New Estimate Form because the balance of harms weighs in favor of a preliminary injunction.  As to any other documents or data, Summit has not shown a threat of irreparable harm.  "The absence of irreparable injury is by itself sufficient to defeat a motion for a preliminary injunction."

*Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015) (quoting *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013)). Because Summit has not demonstrated a threat of irreparable harm as to any other data or documents, the Court need not address the other *Dataphase* factors.

## CONCLUSION

For the reasons stated, the *Dataphase* factors favor issuance of a preliminary injunction with respect to data contained in the New Estimate Form. Reich has not requested that a bond be posted. Because the potential harm to Reich by the issuance of the injunction is minimal, if any, the Court will not order that bond be posted at this time.

IT IS ORDERED:

1. Plaintiff Summit Fire Protection Co.'s ("Summit") Motion for a Preliminary Injunction, ECF No. 6, is granted, in part, as follows:

   During the pendency of this action and until its final hearing and determination, Defendant Ted Reich, and any persons or entities acting in concert with him or on his behalf, are enjoined from directly or indirectly using, disclosing, or transmitting any data contained in the New Estimate Form or any information contained therein or derived therefrom;

2. The Motion is otherwise denied.

Dated this 11th day of October, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge